UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THOMAS MILLER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-298-SEB-WTL |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
|     Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

This cause is before the Court on Defendant's Motion to Dismiss the First Amended Complaint [Docket No. 36], filed on June 25, 2007, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, Thomas Miller, brings his claim against his then employer, Defendant, United Parcel Service, Inc. ("UPS"), for its allegedly discriminatory actions towards him based on his disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and for allegedly retaliating against him for engaging in protected activity. For the reasons detailed in this entry, we GRANT Defendant's Motion to Dismiss as to Count IV and DENY Defendant's Motion to Dismiss as to Counts I, II, and III.

**Factual Background**

Plaintiff, Thomas Miller, began working for UPS in January 1981. Am. Compl. ¶ 5. He was promoted to the position of Business Manager in January 1993 and was

transferred to the company's Indianapolis East facility in connection with that promotion. Id. at 6. In January 1995, Mr. Miller was diagnosed with rheumatoid arthritis ("RA") by UPS's physician. Id. ¶ 7. Mr. Miller claims that RA continues to affect his health negatively and has led to severe joint pain, loss of sleep, severe muscle spasms, diminished use of his thumbs, loss of strength and severe joint stiffness. Id. ¶ 8.

As a result of the diagnosis, Mr. Miller contends that UPS's physician advised Mr. Miller that he needed to be transferred to one of UPS's facilities located in a warmer and drier climate. Id. ¶ 7. In September 1996, without consulting Mr. Miller, UPS transferred him to the UPS facility located in Clarksville, Indiana. Id. ¶ 9. In Clarksville, Mr. Miller worked in the same capacity and with the same duties and responsibilities as he had in Indianapolis. Id. Mr. Miller claims he was informed by UPS that the move to Clarksville constituted the southern relocation that had been recommended by its physician. Id. ¶ 10.

As a result of his RA, Mr. Miller underwent surgery in 2000 and 2002 in which substantial portions of each of his thumb joints were removed. Id. ¶ 11. On January 30, 2004, Mr. Miller's physician sent a letter to UPS regarding the severity of Mr. Miller's condition and requested that he be assigned to a position that required a forty-hour work week. Id. ¶ 13. Mr. Miller contends that, at that point, he had been working sixty to seventy hours per week. Id. The physician's letter was delivered to Ken Walker, District Human Resources Manager for UPS, on March 8, 2004, but Mr. Miller claims that UPS never responded to the letter. Id. ¶¶ 14-15.

In January 2005, Mr. Miller discussed his employment options with Mr. Walker

and UPS Division Manager Mike Michalak. Id. ¶ 16. During that conversation, they discussed Mr. Miller's needs and possible accommodations, including transferring to other positions. Id. However, during that discussion, Mr. Miller contends that Mr. Walker told him that UPS does not make such accommodations. Id. ¶ 17. As a result, UPS placed Mr. Miller on short-term disability and informed him that in order to return to work, his physician first had to release him to do so. Id. ¶ 18. Mr. Miller claims that the next time he spoke with Defendant was in August 2005, when he received a telephone call from UPS, during which they discussed Mr. Miller's health, disability benefits, and necessary accommodations. Id. ¶ 19. Mr. Miller alleges that during that conversation, UPS again stated that it does not make accommodations. Id. ¶ 20.

The position of PAS[1] Manager opened in September 2005, after the individual who held the position retired. Id. ¶ 21. At that point, Mr. Miller met with UPS and discussed his ability and competence to perform the job duties and responsibilities required of that position. Id. During that meeting, Mr. Miller contends that UPS told him that, if he wanted to return to work, he would have to return to his previous position. Id. ¶ 22. Mr. Miller alleges that in October 2005, UPS reviewed his situation and request for accommodation without his involvement or knowledge and made the decision to place him on long-term disability on October 15, 2005. Id. ¶ 23, ¶ 28. In November 2005, UPS

---

[1] It is unclear from the complaint what the acronym "PAS" means, but our research suggests that it is UPS's internal abbreviation for the Preload Assist System, which is a program that UPS developed to help its drivers properly organize their loads for delivery in order to decrease the occurrence of mis-loads.

received Mr. Miller's work restrictions from his physician and Mr. Miller spoke with UPS regarding the restrictions in December 2005, at which point they discussed the position of District Auditor.  Id. ¶¶ 24-25.  Mr. Miller claims he was qualified and competent to perform the duties that position requires.  Id. ¶ 26.  However, UPS did not offer Mr. Miller the District Auditor position, and, according to Mr. Miller, they never even considered him for the job.  Id. ¶ 27.  On May 16, 2006, Mr. Miller filed his charge of discrimination against UPS with the Equal Employment Opportunity Commission ("EEOC").  Id. ¶ 32.

## Legal Analysis

**I.      Standard of Review**

Defendant's motion pursuant to Rule 12(b)(6) seeks the dismissal of this action for failure to state a claim upon which relief may be granted.  A party moving to dismiss bears a weighty burden.  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1960 (2007) (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")).  Thus, we may grant the dismissal only if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic, 127 S.Ct. at 1974.  However, as the Seventh Circuit has recently

recognized, "it is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, id. at 1968-69, by providing allegations that 'raise a right to relief above the speculative level,' id. at 1965." E.E.O.C. v. Concentra Health Servs., Inc., 496 F.3d 773, 777 (7th Cir. 2007). In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the nonmovant. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

## II.     Statute of Limitations

UPS first argues that Mr. Miller's claims that UPS refused to provide reasonable accommodations (Count I), refused to engage in the interactive process (Count II), and engaged in retaliatory behavior when it transferred Mr. Miller to Clarksville, Indiana (Count IV), are barred by the statute of limitations. UPS contends that because the alleged discriminatory acts that support Counts I, II, and IV occurred more than 300 days before Mr. Miller filed his EEOC charge, those claims are barred. Mr. Miller rejoins that while some of the alleged discriminatory acts took place outside of the charging period, other acts that support his claims occurred within that period, and therefore, the claims are actionable.

The statute of limitations is an affirmative defense that a plaintiff does not need to address in a complaint. Graham v. United Postal Service, __ F. Supp. 2d __, 2007 WL

5

2903089, at *2 (N.D. Ill. 2007). However, dismissal "is appropriate where a complaint reveals on its face that it is barred by the relevant statute of limitations." Id. (citing Tregenza v. Great Am. Communications Co., 12 F.3d 717, 718 (7th Cir. 1993)). A condition precedent to filing suit under the ADA is that a plaintiff file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. § 12117(a) (providing that the complaint procedures under Title VII, set forth in 42 U.S.C. § 2000e-5, apply to complaints under the ADA).

Here, Mr. Miller filed his charge of discrimination with the EEOC on May 15, 2006; thus the 300 day period began to run on July 19, 2005. There is no dispute that the initial instances of purported discriminatory conduct that Mr. Miller alleges occurred well before this date. However, some of Mr. Miller's later allegations of ADA violations by UPS did take place within the charging period. UPS argues that any alleged subsequent acts were really just alleged failures to remedy the initial unlawful employment action, and are not themselves discrete actionable violations. Stepney v. Naperville School Dist. 203, 392 F.3d 236, 240 (7th Cir. 2004) (citing Lever v. Northwestern Univ., 979 F.2d 552, 556 (7th Cir.1992)).

It is unclear on the face of the complaint whether the statute of limitations bars Mr. Miller's claims of failure to accommodate and failure to engage in the interactive process. UPS's refusals to allow Mr. Miller to return to work or to grant him other accommodations which occurred within the charging period and could support Counts I and II may either be new acts of discrete discrimination or simply additional failures to

remedy UPS's initial allegedly discriminatory decision.  However, we are unable to determine which is the correct interpretation at this stage in the litigation.  This is particularly true, considering that the complaint alleges that each time Mr. Miller and UPS spoke regarding the possibility of Mr. Miller returning to work, they discussed what appear to be completely different job positions for which Mr. Miller alleges he was qualified.  Thus, Defendant's motion to dismiss for failure to comply with the statute of limitations is DENIED as to Counts I and II.

Count IV, however, is time-barred.  In Count IV, Mr. Miller alleges that UPS's decision to transfer him from East Indianapolis to Clarksville, Indiana, was made in retaliation for his physician's recommendation that he be transferred to a drier, warmer location.  Mr. Miller's transfer occurred in September 1997, almost nine years before he filed his EEOC charge, and he alleges no other discriminatory acts that took place within the charging period which might independently support this claim.  Therefore, Defendant's motion to dismiss Count IV for failure to comply with the statute of limitations is GRANTED.

### III. Failure to Exhaust Administrative Remedies

UPS also argues that Mr. Miller's retaliation claims, which are based on his placement on short-term and long-term disability (Count III) and his transfer to

Clarkesville, Indiana (Count IV),[2] are barred by Mr. Miller's failure to exhaust administrative remedies. As with the statute of limitations, failure to exhaust administrative remedies is an affirmative defense. Salas v. Wisconsin Dep't of Corrections, 493 F.3d 913, 921-22 (7th Cir. 2007). A complaint may not be dismissed for merely failing to rebut an affirmative defense; "dismissal is only appropriate if a plaintiff pleads herself [or himself] out of court by alleging facts that affirmatively establish the defense." Waldron v. Dugan, 2007 WL 4365358, at *5 (N.D. Ill. 2007) (citing Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006)); accord Tregenza, 12 F.3d at 718-19.

In order for Mr. Miller to be deemed to have exhausted his administrative remedies, his claims in the complaint must be within the scope of the charges he filed with the EEOC. Graham, 2007 WL 2903089, at *4 (citing Conner v. Illinois Dep't of Natural Resources, 413 F.3d 675, 680 (7th Cir. 2005)). "[A] claim in a civil action need not be a replica of a claim described in the charge, but there must be 'a reasonable relationship between the allegations in the charge and the claims in the complaint,' and it must appear that 'the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.'" Vela v. Village of Sauk Village, 218 F.3d 661, 664 (7th Cir. 2000) (quoting Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)). In order to be reasonably related, "the EEOC charge

---

[2] Because we dismissed Count IV as untimely *supra*, we need not further address UPS's alternative argument that it is barred by Mr. Miller's failure to exhaust administrative remedies. Thus, we address UPS's failure to exhaust administrative remedies argument only as it applies to Count III.

and the complaint must, at a minimum, describe the same conduct and implicate the same individuals." Cheek, 31 F.3d at 501.

Here, Mr. Miller did not plead himself out of court. Although he did not check the box for "retaliation" on the EEOC charging form (attached to Mr. Miller's complaint as Exhibit B), he stated on the form that he was "denied an accommodation and placed on disability leave." Exh. B. In fact, he mentioned his placement on disability leave multiple times on the charging form and also named the same individuals in both his EEOC charge and his complaint as the individuals who were responsible for the decision to place him on disability. Given these facts, a retaliation claim based upon Mr. Miller's placement on disability leave is reasonably related to his EEOC charge, or at least could reasonably be expected to grow out of an EEOC investigation of the allegations contained in the EEOC charge. Thus, at this early pleading stage, we find there is a sufficient nexus between the facts alleged in Mr. Miller's complaint and the facts alleged in his charge to preclude dismissal at this time.

### IV.    **Failure to State a Cause of Action**

Finally, UPS argues that Mr. Miller's retaliation claim based on his placement on short and long-term disability (Count III) should be dismissed for failure to state a claim because Mr. Miller pled himself out of court by alleging that he was unable to perform the duties of his position by working the required hours. UPS correctly contends that in order to state a valid claim for retaliation under the indirect method, a plaintiff must

9

establish that he was satisfactorily performing his job at the time of the alleged adverse action.  See Rogers v. City of Chicago, 320 F.3d 748, 754-55 (7th Cir. 2003) (setting forth factors for prima facie case of retaliation).  However, such a finding, at least under the circumstances presented in this case, is too fact-intensive to determine in the context of a motion to dismiss.  Although Mr. Miller did allege that his physician requested that Mr. Miller be assigned to a position requiring a normal forty-hour work week, rather than the sixty to seventy hours per week that he had been working, it is unclear from the face of the complaint whether working sixty to seventy hours a week was a requirement of his original position and part of UPS's legitimate job expectations.  Thus, because Plaintiff has not pled himself out of court, under either of Defendant's theories, Defendant's motion to dismiss Count III is DENIED.

### V.     Conclusion

For the reasons detailed above, we GRANT Defendant's motion to dismiss as to Count IV, and DENY Defendant's motion to dismiss as to Counts I, II, and III.  IT IS SO ORDERED.

Date:  01/15/2008

*[signature]*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Nelson D. Alexander
LOCKE REYNOLDS LLP
nalexander@locke.com

10

David T. Barton
QUARLES & BRADY, LLP
dbarton@quarles.com

Tami R. Hart
LAW OFFICES OF LAWRENCE M. REUBEN
hart@reubenlaw.net

Eric B. Johnson
QUARLES & BRADY, LLP
ejohnson@quarles.com

Lawrence M. Reuben
Law Offices of Lawrence M. Reuben
reuben@reubenlaw.net